UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CYRUS BARNES,  :
                Plaintiff,  :
v.  :     **OPINION AND ORDER**
  :
  :    21 CV 9749 (VB)
WILLIAM I. PARKEN,  :
                Defendant.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Cyrus Barnes, a detective in the Sullivan County Sheriff's Office ("SCSO"), brings this action under Section 205-e of New York General Municipal Law and Section 11-106 of the New York General Obligations Law, which permit police officers to bring tort claims for injuries sustained in the line of duty.[1]  Plaintiff alleges he responded to an automobile accident negligently caused by defendant William Parken, and that he suffered injuries to his back, neck, and left knee while helping another driver exit her vehicle.

      Now pending are the parties' cross-motions for summary judgment.  Defendant seeks judgment dismissing the action in its entirety.  (Doc. #56).  Plaintiff seeks dismissal of defendant's affirmative defenses based on comparative fault, assumption of risk, and failure to establish a threshold injury under New York's no-fault law.  (Doc. #49).

      For the reasons set forth below, defendant's motion is DENIED and plaintiff's motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1]    Although plaintiff's brief alludes to "the 205-e and 11-106 cause of action" (Doc. #51 ("Pl. Mem.") at 1), these statutory provisions create separate, albeit overlapping, causes of action.  See Diegelman v. City of Buffalo, 28 N.Y.3d 231, 239–40 (2016).  Plaintiff also brought a common-law negligence claim, which he has withdrawn.  (Pl. Mem. at 2).

1

**BACKGROUND**

The parties have submitted memoranda of law, declarations with exhibits, and statements of undisputed material fact pursuant to Local Civil Rule 56.1, which together reflect the following factual background.[2]

I. The Underlying Incident

On the morning of January 28, 2019, defendant turned left in front of an oncoming vehicle operated by non-party Molly Krivit on Route 17B in the Town of Thompson. Krivit, who was travelling at approximately fifty-five miles per hour (the applicable speed limit), was "going too fast to slow down to avoid" defendant's car, which was "right in front of" her. (Doc. #56-2 ("Krivit Tr.") at 8). After the collision, Krivit's vehicle rolled onto its side.

At the time of the accident, plaintiff was on duty as a SCSO detective, in plainclothes, and happened to be driving an unmarked SCSO vehicle directly behind defendant. He and another on-duty plainclothes detective, Edward Clouse, were returning to the sheriff's station after dropping off Clouse's SCSO vehicle for repairs.

---

[2] Statements of undisputed material fact "will be deemed to be admitted for the purposes of the motion unless specifically controverted by" the opposing party, and "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(c)–(d). If an opposing party does not "actually dispute" specific statements of material fact or provide a citation to admissible evidence in attempting to do so, the Court may find such statements undisputed. Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600–01 (S.D.N.Y. 2018), aff'd, 798 F. App'x 682 (2d Cir. 2019) (summary order).

Defendant does not actually dispute certain statements of material fact in plaintiff's Rule 56.1 statement (Doc. #52); defendant either cites to evidence that does not controvert the corresponding statement of material fact or does not cite to admissible evidence at all. (Doc. #56-11 ("Def. 56.1 Counterstatement")). The Court has independently reviewed the statements defendant attempts to controvert in this manner and, when supported by admissible evidence, the Court deems them undisputed for the purpose of deciding the motions.

Immediately after witnessing the collision, plaintiff stopped his vehicle and turned on its emergency lights. Clouse radioed for emergency services while plaintiff went to check the drivers for injuries.

Plaintiff checked on defendant first. After defendant said he was "fine," plaintiff and Crouse checked on Krivit. (Doc. #58-1 ("Pl. Tr.") at 33–34). At that point, Krivit was still in her vehicle, which was tipped on its passenger side with the driver's side door facing up. She was extremely upset, as she saw blood in the vehicle but was unsure of its source, her "anxiety was so high, [she] couldn't quite figure out how to get out," and gravity pulled her door closed each time she tried to open it. (Krivit Tr. at 11, 16, 25; see also Pl. Tr. at 41–42). According to plaintiff, Krivit was "freaking out" as she tried to open the door, screaming "Help" and "Get me out." (Pl. Tr. at 34–35, 37). Plaintiff testified he "went to help get her out" because "she was going to hurt herself had she continued doing that." (Id. at 34–35).

The parties dispute the nature and extent of the assistance plaintiff provided to Krivit, and whether plaintiff was injured while helping her.

Defendant contends plaintiff merely spoke to Krivit and guided her with his hand, and that plaintiff's complained-of injuries are not the result of helping Krivit, but rather a workplace incident from two years earlier. Defendant offers portions of Krivit's testimony in which she stated "[n]o one ever lifted me" and that when she jumped, plaintiff "maybe just . . . guided [her] down" with his hand on her arm. (Krivit Tr. at 12, 17). Defendant also notes the accident report, prepared by a uniformed officer at the scene, does not mention any injuries to plaintiff (Doc.

#55-1 at ECF 2–5),³ and Krivit testified she did not remember plaintiff saying, or otherwise indicating, he was in any pain or discomfort. (Krivit Tr. at 30).

In addition, plaintiff testified, and a worker's compensation record reflects, that he tripped on the stairs at work in April 2017, twisting his back and his left knee (the "2017 Injuries"). (Pl. Tr. 17–24). Plaintiff received treatment for the knee injury on several occasions, and admitted he had occasional swelling and aching in his left knee in the month before the car accident. (Id. at 54–55). Defendant also points to a "Acupuncture- New Patient Information Form" filled out by plaintiff ten days after the accident, in which plaintiff refers to the April 2017 "fall on stairs" and a "2/4/19 – wrench upper back & neck," but does not mention the January 28, 2019, accident. (Doc. #56-6 at ECF 2). Plaintiff's medical records also reflect degenerative changes in his knee and at multiple levels of his cervical spine. (Doc. #58-3 ("Pl. Expert Report") at 2).

Plaintiff, on the other hand, offers evidence suggesting he helped Krivit get out of the vehicle and down to the ground, supporting some of her weight while doing so, and thereby exacerbated the 2017 Injuries. Plaintiff and Clouse both testified plaintiff climbed up the undercarriage of the vehicle, held Krivit's door open, and helped her climb out of the vehicle. (Pl. Tr. at 35–40; Doc. #55-6 ("Clouse Tr.") at 8–9, 35–39, 49). Plaintiff further testified Krivit held onto his neck and torso as she climbed out, with plaintiff lifting her "slightly." (Pl. Tr. at 39–40). And Krivit testified that because she was still "shaken up" and "scared to jump down" from the top of the vehicle, which was at least five feet from the ground, plaintiff "physically guided [Krivit] down," supporting "some" of her weight with his shoulder and arm on their way

---

³ "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

to the ground. (Krivit Tr. at 12, 18, 21, 28–34, 40). Krivit's testimony on this point is corroborated by plaintiff and Clouse. (Pl. Tr. at 35–43; Clouse Tr. at 8–10, 33–42, 49–51).

Plaintiff testified he did not notice any pain while at the scene of the accident—he felt only "adrenaline" as he helped Krivit exit the vehicle and walked her to his car to wait for an ambulance. (Pl. Tr. at 43–45). A few minutes later, after emergency services arrived and Krivit got into the ambulance, plaintiff drove back to the station with Clouse. Plaintiff claims he started feeling pain about thirty minutes after returning to the station, and went to a nearby hospital to get checked out. (Id. 46–50). Plaintiff informed Clouse, who submitted a memorandum to SCSO Lieutenant Paul Pratti later that day, with the subject line "On duty injury to Det./Cpl. Barnes." (Doc. #55-3). In the memorandum, Clouse provided a brief account of the assistance he and plaintiff provided after witnessing the accident, and advised Lieutenant Pratti that plaintiff "injured his back, supporting [Krivit] and her weight" while helping her to the ground. (Id.).

Dr. Mark Berman, an orthopedic surgeon retained as plaintiff's expert witness, opined "[a]s a result of this accident the cervical and lumbar spine worsened and [plaintiff] sustained a left knee lateral meniscus tear." (Pl. Expert Report at 3). Dr. Berman noted plaintiff had "recovered" from the 2017 Injuries, such that he "had been working full duty" until the day of the accident. (Id. at 1). Dr. Berman concluded the assistance plaintiff provided to Krivit aggravated those preexisting 2017 Injuries and "directly caused" the meniscus tear, ultimately preventing plaintiff from working full duty and forcing him to retire. (Id. at 1, 3).

II.   Defendant's Ticket and Guilty Plea

On January 28, 2019, defendant was issued a traffic ticket for violating Section 1441 of the New York State Vehicle and Traffic Law in connection with the collision. Section 1441 provides that "[t]he driver of a vehicle intending to turn to the left within an intersection or into

an alley, private road, or driveway shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close as to constitute an immediate hazard."

Defendant pleaded guilty to the Section 1441 violation on February 13, 2019, in the Thompson Town Court.  (Doc. #55-2).

## DISCUSSION

I.  Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[4]

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[4]  Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for it. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the [non-moving] party" on the issue on which summary judgment is sought, "summary judgment is improper." See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

In deciding cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration" and need not ultimately "grant judgment as a

matter of law for one side or the other." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993).

II.     Defendant's Motion for Summary Judgment

Defendant contends there is no genuine dispute of material fact with respect to plaintiff's claims under Section 205-e and Section 11-106 and thus, he is entitled to summary judgment.

The Court disagrees.

A.      Applicable Law

Section 205-e permits a police officer to bring a tort claim for injuries sustained in the line of duty, when such injuries "occur 'directly or indirectly as a result of'" a defendant's negligent violation of a statute or other government regulation. Cioffi v. S.M. Foods, Inc., 178 A.D.3d 1006, 1010 (2d Dep't 2019) (quoting N.Y. Gen. Mun. Law § 205-e(1)). To recover under Section 205-e, a plaintiff "must [1] identify the statute or ordinance with which the defendant failed to comply, [2] describe the manner in which the [police officer] was injured, and [3] set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm." Gammons v. City of New York, 24 N.Y.3d 562 (2014). Notably, to satisfy the causation requirement, a plaintiff "need only establish a practical or reasonable connection between the statutory or regulatory violation and the claimed injury," not that the violation proximately caused his injuries. Giuffrida v. Citibank Corp., 100 N.Y.2d 72, 80–81 (2003).

Similarly, "General Obligations Law § 11-106 allows a police officer to bring a tort claim for injuries suffered in the line of duty as the result of, inter alia, the negligence of any person other than the police officer's employer or co-employee." Cioffi v. S.M. Foods, Inc., 178 A.D.3d at 1010. However, unlike Section 205-e, Section 11-106 requires a police officer to

8

demonstrate his injuries were "proximately caused" by the defendant's negligence.  N.Y. Gen. Oblig. Law § 11-106.

B.  Application

Here, the parties disagree as to whether defendant acted negligently, and if so, whether such negligence caused plaintiff's injuries.[5]

First, plaintiff has made a prima facie showing that defendant negligently committed a traffic law violation.  Plaintiff, Clouse, and Krivit all testified defendant turned left immediately in front of Krivit's oncoming vehicle, and defendant pleaded guilty to violating Section 1141.  Although defendant now denies he violated Section 1441, and claims he "pled for reasons other than admission of guilt, such as, inter alia, to avoid the need for a trial," he offers no evidence in support of his position.  (Def. 56.1 Counterstatement ¶¶ 6, 8).  Accordingly, the Court finds plaintiff has established defendant's negligent violation of a statute as required under Section 205-e, as well as the negligence required under Section 11-106.  See Marangoudakis v. Suniar, 208 A.D.3d 1233, 1235 (2d Dep't 2022) ("A violation of Vehicle and Traffic Law § 1141 constitutes negligence per se."); Dubois v. Vanderwalker, 245 A.D.2d 758, 760 (3d Dep't 1997) ("Vehicle and Traffic Law violations will support a finding of liability under General Municipal Law § 205-e.").

---

[5]  In his argument regarding causation, defendant notes plaintiff "was not called to the emergency scene" but rather voluntarily provided aid after witnessing the accident. (Doc. #56-10 ("Def. Mem.") at 4).  To the extent defendant argues plaintiff did not act in his official capacity and therefore cannot recover under Section 205-e or Section 11-106, the Court finds plaintiff has offered sufficient evidence, via his deposition testimony and SCSO records, to raise a triable issue of fact as to whether plaintiff was injured while performing his duties as a police officer.  Giuffrida v. Citibank Corp., 100 N.Y.2d at 81–82.

9

Second, there are genuine disputes of material fact as to whether defendant's negligent violation of Section 1141 caused plaintiff's injuries.

On the one hand, the record contains evidence from which a reasonable jury could conclude defendant's negligence did not cause plaintiff's injuries, either directly or indirectly. For example, there is a genuine dispute as to how much of Krivit's weight, if any, plaintiff supported while helping her exit the vehicle. Further, jurors could find it significant that, when filling out a patient information form ten days after the accident, plaintiff did not mention the accident, but instead listed the 2017 fall and a February 4, 2019, incident. In short, a reasonable jury could conclude the complained-of injuries were solely the result of plaintiff's 2017 fall, and that plaintiff is trying to "extend" his earlier worker's compensation claims "under the guise of taking Ms. Krivit by the hand." (Def. Mem. at 6).

On the other hand, there is evidence from which a reasonable jury could conclude plaintiff bore some of Krivit's weight as she climbed up through the door of the vehicle and jumped to the ground. Krivit's testimony suggests there was at least some "pulling or pressure" on plaintiff's neck, back, and knee, despite defendant's claim to the contrary. (Krivit Tr. at 28–30; cf. Doc. #60 at 2). And jurors might well credit Dr. Berman's expert opinion that providing such assistance exacerbated plaintiff's preexisting injuries and caused a new tear to his meniscus.

Moreover, that plaintiff was not involved in the collision or injured by either vehicle does not preclude a finding that defendant's negligence proximately caused plaintiff's injuries, as required for liability under Section 11-106. Under the doctrine of "danger invites rescue," a defendant may be held liable when "his or her culpable act has placed another person in a position of imminent peril which invites a third person, the rescuing plaintiff, to come to his or her aid." Encompass Indem. Co. v. Rich, 131 A.D.3d 476, 478 (2d Dep't 2015). "In order for

10

the doctrine to apply, the rescuer must have had a reasonable belief that the person being rescued was in peril." Kesick v. New York Cent. Mut. Fire Ins. Co., 106 A.D.3d 1219, 1221 (3d Dep't 2013). "The reasonableness of a decision to intervene is generally a question for the factfinder." Id.

Here, plaintiff testified Krivit was panicking and screaming for help, and he was concerned she would injure herself if she continued trying to exit the vehicle unassisted. Plaintiff's testimony is corroborated by Krivit's description of her anxiety after seeing blood in the vehicle and being unable to get out of the vehicle. Drawing all permissible factual inferences in favor of plaintiff, as the non-movant, the Court "cannot conclude, as a matter of law, that [plaintiff's] belief that" Krivit was in danger was unreasonable. Kesick v. New York Cent. Mut. Fire Ins. Co., 106 A.D.3d at 1221. Moreover, "plaintiff's injuries were not so remote in either time or space to the use of [defendant's] automobile as to preclude a finding of proximate cause as a matter of law." Id. at 1222.

Accordingly, plaintiff's Section 205-e and Section 11-106 claims may proceed.

III.   Plaintiff's Motion for Partial Summary Judgment

Plaintiff contends three of defendant's affirmative defenses must be dismissed as a matter of law: comparative fault, assumption of the risk, and failure to establish a threshold injury under New York's no-fault law.

The Court agrees that with respect to the Section 205-e claim, the defenses of comparative fault and assumption of the risk are unavailable. Otherwise, the Court disagrees.

A.   Comparative Fault and Assumption of the Risk

Plaintiff argues the affirmative defenses of comparative fault and assumption of the risk must be dismissed because they are barred as a matter of law.

Section 205-e "is a statute of strict liability." Dubois v. Vanderwalker, 245 A.D.2d at 761. As such, affirmative defenses tied to the culpable conduct of the plaintiff, like comparative fault and assumption of the risk, are unavailable for Section 205-e claims. Giuffrida v. Citibank Corp., 100 N.Y.2d at 83.

But plaintiff does not cite, and the Court is not aware of, any cases establishing that Section 11-106 imposes strict liability.

Accordingly, defendant's affirmative defenses of comparative fault and assumption of the risk may proceed only as defenses to plaintiff's Section 11-106 claim.

B. Failure to Establish a Threshold Injury

Plaintiff contends the affirmative defense of failure to establish a threshold injury, which is based on New York's no-fault insurance law, is inapplicable here as a matter of law.

The Court disagrees.

New York's no-fault law—and its threshold requirement that a plaintiff establish a serious injury—applies when a plaintiff's injuries "aris[e] out of the use or operation" of a covered motor vehicle. Walton v. Lumbermens Mut. Cas. Co., 88 N.Y.2d 211, 213 (1996). The New York Court of Appeals has interpreted this to mean the "use or operation" of the vehicle was a "proximate cause" or "instrumentality" that produced the plaintiff's injury. Cividanes v. City of New York, 20 N.Y.3d 925, 926 (2012). The rationale for this rule is that the legislature "inten[ded] to draw a line between motor vehicle accidents and all other types of torts and to remove only the former from the domain of common-law tort litigation." Id.

Plaintiff argues the no-fault law does not apply because "[h]e was not injured by the use or operation of either of the vehicles involved in the accident," but rather "by the physical forces exerted on him by gravity and Ms. Krivit." (Pl. Mem. at 4). Plaintiff seems to assume that

12

because his alleged injuries did not arise from his <u>own</u> "use or operation" of either vehicle, his claims fall outside the scope of the no-fault law.  However, a plaintiff's injuries may arise from the "use or operation" of a vehicle by another, when the other individual's negligent operation of a vehicle proximately causes the plaintiff's injuries.  <u>See</u> <u>In re Farm Fam. Cas. Ins. Co.</u>, 301 A.D.2d 740, 741 (3d Dep't 2003) (driver's negligent collision with a utility pole proximately caused injuries to nearby woman who, "[i]n attempting to run away from" sparks and hot pieces of wire, "fell and sustained injuries to her head and left knee"); <u>Kesick v. New York Cent. Mut. Fire Ins. Co.</u>, 106 A.D.3d at 1221 (finding triable issue of fact as to whether first responder's injuries, sustained when rescuing driver, were proximately caused by the defendant's negligent operation of his vehicle, and explaining [i]n our view, the 'use' of the underinsured motor vehicle was [the defendant's] negligent operation of his vehicle").

For the reasons stated in Section II.B. <u>supra</u>, there are genuine issues of material fact as to whether defendant's negligence proximately caused plaintiff's injuries.  As such, the Court cannot conclude, as a matter of law, that plaintiff's injuries do not arise out of the operation of a motor vehicle, within the meaning of the no-fault insurance law.

Accordingly, defendant's affirmative defense of failure to establish a threshold injury under New York's no-fault law may proceed.

## CONCLUSION

Defendant's motion for summary judgment is DENIED.

Plaintiff's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.  Defendant's affirmative defenses of comparative fault and assumption of risk are dismissed only as to plaintiff's Section 205-e claim.  Defendant's affirmative defenses may otherwise proceed.

The Court will conduct a case management conference on **May 31, 2023, at 2:30 p.m.,** at which time counsel shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what efforts they have made and will make to settle this case. The conference will be held in person at the White Plains courthouse, Courtroom 620.

The Clerk is instructed to terminate the motions. (Docs. ##49, 56).

Dated: April 27, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge